IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NAVJIT K. SIDHU, et al.,

    Plaintiffs,

  v.

EMILIA BARDINI, et al.,

    Defendants.
                                          /

No. C 08-05350 CW

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

    Plaintiffs bring this action to challenge the termination of their asylum status by United States Citizenship and Immigration Services (USCIS) as a violation of the Immigration and Nationality Act (INA), its governing regulations and the Administrative Procedures Act (APA).  Defendants move to dismiss Plaintiffs' complaint arguing that the Court has no subject matter jurisdiction to hear it or, in the alternative, that Plaintiffs have failed to state a claim.  Plaintiffs oppose the motion.  The matter was heard on May 28, 2009.  Having considered oral argument and all of the papers submitted by the parties, the Court grants in part Defendants' motion.

BACKGROUND

    Plaintiff Navjit Sidhu is a native and citizen of India, and is currently residing in Hayward, California.  On July 6, 2000, the

San Francisco Asylum Office (SFAO) granted Plaintiff Navjit Sidhu asylum. On January 2, 2002, Ms. Sidhu filed an application to adjust her status to that of a lawful permanent resident. She also filed petitions to confer derivative asylee status on behalf of her husband, Harjit Sidhu, and four children, Nirmaljit, Gurpreet, Sat and Sarbug. On March 28, 2002 and May 23, 2002, the USCIS approved the derivative status petitions. In September, 2006, Mr. Sidhu was interviewed by the USCIS about his application for adjustment of status.

On March 28, 2007, Ms. Sidhu filed a lawsuit in the U.S. District Court for the Northern District of California seeking to compel the USCIS to adjudicate her family's applications for adjustment of status. The lawsuit was dismissed after the USCIS agreed to adjudicate these applications within sixty days from the dismissal of the action.

On July 9, 2007, the SFAO issued a Notice of Intent to Terminate Asylum Status (NOIT), pursuant to 8 C.F.R. § 208.24(a)(1).[1] The NOIT notified Ms. Sidhu that

> USCIS has obtained evidence that indicates fraud in your application for asylum such that you were not eligible for asylum at the time it was granted: the grant of asylum you received was based in part on harm to you and your second husband, Harjit Singh Sidhu, in 1997. The I-730 Refugee/Asylee Relative Petition that you filed on behalf of Harjit Sidhu calls into question the veracity of the testimony you provided about what happened to you and your husband in India. In addition, you failed to disclose on immigration forms filed after you were granted asylum in the U.S. that you

---

[1] 8 C.F.R. § 208.24(a) provides:
[a]n asylum officer may terminate a grant of asylum made under the jurisdiction of an asylum officer or a district director if following an interview, the asylum officer determines that:
    (1) There is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted . . . .

2

> were ever arrested. The grant of asylum you received was based in large part on the arrest and harm you claim to have suffered in India, combined with the harm to your husband in India. This evidence calls into question the veracity of the asylum claim you presented and indicates fraud in your application such that you were not eligible at the time you were granted.

The letter also informed Ms. Sidhu that "in order to give you the opportunity to respond to this adverse information, we have scheduled a termination interview at least thirty (30) days after the date of this notice in order to give you sufficient time to prepare for the interview." The letter also noted, "You will have the opportunity at the interview to present information and evidence to show that you are still eligible for asylum. Your asylum status will not be terminated unless a preponderance of the evidence supports termination." The letter stated that Ms. Sidhu could bring legal representation to the termination interview.

On August 23, 2007, the Sidhu family and their attorney Sara Coppin attended the termination interview. Ms. Coppin alleges that she was not permitted meaningfully to participate in the USCIS's examination of Ms. Sidhu and her husband because (1) during the interview the asylum officer referred to notes from Ms. Sidhu's original asylum interview but Ms. Coppin and Ms. and Mr. Sidhu were not allowed to review these documents, (2) Ms. Coppin was not allowed to cross-examine the makers of these documents and (3) Ms. Sidhu was not permitted to present a witness to testify on her behalf.

On September 7, 2007, the SFAO terminated Ms. Sidhu's asylum status and the derivative asylum status of her husband and children. The termination notice stated:

> You were granted asylum on July 6, 2000, based on your claim

3

> that you were arrested together with your husband and subsequently harmed by the Indian authorities because of your and your husband's political activity. After a review of your asylum application, the testimony you gave at your asylum application, the I-730 you filed for your husband, the applications for adjustment of status filed by you and your husband, and the sworn testimony given by yourself and your husband at the asylum office on August 23, 2007, inconsistencies were evidenced concerning your claim that you and your husband were politically active and that as a result of these activities you were both arrested and harmed, you being detained for one day and your husband for over four years. You were unable to provide a reasonable explanation for these inconsistencies.
>
> Taking into consideration the totality of the circumstances, the preponderance of the evidence indicates fraud in your asylum application such that you were not eligible for asylum and that termination of your asylum status is appropriate.

The letter also stated, "Enclosed please find a Notice of Appear (Form I-862), which places you and your dependents under removal proceedings."

On April 29, 2008, Plaintiffs renewed their asylum claims by filing applications with the immigration court. On November 25, 2008, Plaintiffs filed the present lawsuit challenging the termination of their asylum status. Plaintiffs filed a first amended complaint on March 19, 2009.

                          LEGAL STANDARD

I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

4

1     Dismissal is appropriate under Rule 12(b)(1) when the district
2 court lacks subject matter jurisdiction over the claim.  Fed. R.
3 Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either attack the
4 sufficiency of the pleadings to establish federal jurisdiction, or
5 allege an actual lack of jurisdiction which exists despite the
6 formal sufficiency of the complaint.  Thornhill Publ'g Co. v. Gen.
7 Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v.
8 Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).
9 II.  Motion to Dismiss for Failure to State a Claim
10    A complaint must contain a "short and plain statement of the
11 claim showing that the pleader is entitled to relief."  Fed. R.
12 Civ. P. 8(a).  When considering a motion to dismiss under Rule
13 12(b)(6) for failure to state a claim, dismissal is appropriate
14 only when the complaint does not give the defendant fair notice of
15 a legally cognizable claim and the grounds on which it rests.
16 Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In
17 considering whether the complaint is sufficient to state a claim,
18 the court will take all material allegations as true and construe
19 them in the light most favorable to the plaintiff.  NL Indus., Inc.
20 v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).
21     When granting a motion to dismiss, the court is generally
22 required to grant the plaintiff leave to amend, even if no request
23 to amend the pleading was made, unless amendment would be futile.
24 Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911
25 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment
26 would be futile, the court examines whether the complaint could be
27 amended to cure the defect requiring dismissal "without
28 contradicting any of the allegations of [the] original complaint."

Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

III. Legal Process to Terminate Asylum

Immigration law provides for two alternative routes to terminate a grant of asylum:

> When USCIS initiates termination proceedings, it may do so by initiating and conducting termination proceedings at the asylum office . . . or USCIS may elect to issue an NTA [i.e. Notice to Appear] concurrently with a Notice of Intent to Terminate Asylum Status by EOIR [Executive Office for Immigration Review]. . . to vest the Immigration Court with jurisdiction over the termination proceedings. See 8 C.F.R. § 208.24(f).

U.S. Citizenship and Immigration Services' Affirmative Asylum Procedures Manual at 144 (2007) (hereinafter Asylum Manual). In the present case, the USCIS chose to conduct its own termination proceeding at the SFAO.

Before holding the proceeding, the asylum office issues a NOIT, which lists the grounds for the intended termination and contains a summary of the evidence supporting the grounds. 8 C.F.R. § 208.24(c); Asylum Manual at 143. The NOIT must be issued at least thirty days prior to the scheduled interview. At the interview, "The alien shall be provided with an opportunity to present evidence showing that he or she is still eligible for asylum or withholding of deportation or removal." 8 C.F.R. § 208.24(c). After the interview, "[i]f the asylum officer determines that the alien is no longer eligible for asylum or withholding of deportation or removal, the alien shall be given written notice that asylum status or withholding of deportation or

6

removal and any employment authorization issued pursuant thereto, are terminated." Id. After asylum status is terminated, the asylum office "must place the individual before the Immigration Court." Asylum Manual at 151.

In the present case, at the same time Plaintiffs' asylum status was terminated, the USCIS concurrently issued a NTA, which placed them in removal proceedings. In a removal proceeding, the alien is entitled to a full evidentiary hearing in immigration court, which includes "a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government . . . ." 8 U.S.C. § 1229a(b)(4).

## DISCUSSION

### I. Subject Matter Jurisdiction

#### A. Final Agency Action and Ripeness

Plaintiffs assert subject matter jurisdiction under the APA. Judicial review under the APA is limited to review of "final agency action." 5 U.S.C. § 704. Section 704 of the APA states,

> Agency action made reviewable by statute and final agency action for which there is no adequate remedy in court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

For agency action to be final, the action must (1) "mark the consummation of the agency's decision making process -- it must not be of a merely tentative or interlocutory nature and" (2) "be one

7

by which rights or obligations have been determined or from which legal consequences will follow." Bennet v. Spear, 520 U.S. 154, 177-178 (1997) (internal citations and quotations omitted). The Supreme Court has "interpreted the 'finality' element in a pragmatic way." FTC v. Standard Oil of Cal., 449 U.S. 232, 239 (1980). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Franklin v. Massachusetts, 505 U.S. 788, 797 (1992). Certain factors provide an indicia of finality, such as "whether the [action] amounts to a definitive statement of the agency's position, whether the [action] has a direct and immediate effect on the day-to-day operations of the party seeking review, and whether immediate compliance [with the terms] is expected." Cal. Dep't of Water Res. v. FERC, 341 F.3d 906, 909 (9th Cir. 2003).

Here, the question is whether the USCIS's decision to terminate Plaintiffs' asylum status is a final agency action. One factor weighing in favor of such a finding is the fact that neither the INA nor its implementing regulations give them a right to appeal USCIS's decision to terminate their asylum status. Although an immigration judge does not have jurisdiction to review the specific USCIS decision to terminate asylum, such a judge does have the right to review and adjudicate whether Plaintiffs are entitled to asylum or withholding of removal. Defendants are currently in removal proceedings and have reasserted their right to apply for asylum in that proceeding. That hearing is similar to the interview Plaintiffs were provided as part of their asylum status termination but there are important differences between the two.

8

In the removal proceeding, Plaintiffs will have greater rights to present evidence and cross-examine witnesses,[2] but they will also have the burden to prove their asylum claim. In the asylum termination interview, Plaintiffs did not have the same rights with respect to presenting evidence and cross-examining witnesses, but Defendants had the burden to prove a valid reason to terminate Plaintiffs' asylum status.

Another factor in favor of finding final agency action is the fact that the USCIS's decision had a direct and immediate effect on Plaintiffs' day-to-day life. As a result of having their asylum status terminated, Plaintiffs lost their legal right to live and work in the United States, as well as their right to travel in and out of the United States.

Before determining whether an agency action is final, the Court must also consider whether Plaintiffs have exhausted their administrative remedies. At the same time that Plaintiffs received an official letter terminating their asylum application, they also received a Notice to Appear (NTA) (Form I-862), which placed them under removal proceedings. Defendants argue that, once removal proceedings were initiated against Plaintiffs, an administrative forum for raising their asylum legal claim became immediately available to them and the USCIS decision was rendered "non-final." Though it is true that Plaintiffs can and have renewed their asylum

---

[2] Under 8 U.S.C. § 1229a(b)(4), an alien in removal proceedings has many procedural rights, including "the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing," "a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross examine witnesses presented by the government." Further, "a complete record shall be kept of all testimony and evidence produced at the proceeding."

9

claims in the removal proceeding, pursuing those claims is a far cry from the remedy they seek. If Plaintiffs prevail in all aspects of their APA suit, the Court would recognize that they were previously granted asylum status, set aside the unlawful termination, and order the agency to furnish them with proof of their asylum status. The mere opportunity to submit to the discretion of the immigration court a renewed request for asylum status would not relieve the hardship caused by withholding court consideration of Plaintiffs' claims that they already have that status. See Sharkey v. Quarantillo, 541 F.3d 75, 90 (2d Cir. 2008). Thus, the Court has subject matter jurisdiction to hear Plaintiffs' claims.

II.  Motion to Dismiss

Defendants argue that Plaintiffs fail to state a claim that Defendants violated the INA and its implementing regulations. Defendants assert that they sufficiently described and disclosed their reasons for seeking to terminate Plaintiffs' asylum status and afforded Plaintiffs an opportunity to submit rebuttal evidence, which is all that the regulations governing asylum termination requires. The Court disagrees. The NOIT issued by the USCIS was insufficient on its face to apprise Plaintiffs of its reasons for seeking to terminate Plaintiffs' asylum status.

The notice stated that Ms. Sidhu was granted asylum based on her claim that she was arrested together with her husband and subsequently harmed by the Indian authorities because of her and her husband's political activity. The notice vaguely explained that a recently filed form (I-730 Refugee/Asylee Relative Petition) on behalf of Harjit Sidhu "calls into question the veracity of the

10

1 testimony you provided about what happened to you and your husband
2 in India." However the notice does not explain in any more detail
3 how that form calls into question the veracity of Ms. Sidhu's
4 testimony. There is no way to discern from this letter what aspect
5 of her husband's I-730 conflicted with her previous testimony. The
6 asylum office was required to issue a notice which lists the
7 "ground(s) for the intended termination and [] a summary of the
8 evidence supporting the gound(s)." Asylum Manual at 143; 8 C.F.R.
9 § 208.24(c). Ms. Sidhu's notice contains neither. Therefore, the
10 Court will allow Plaintiffs' first cause of action to proceed to
11 the extent that it asserts a cause of action for violating the
12 notice requirement of § 208.24(c).
13     Plaintiffs also assert that Defendants violated the INA by
14 not following 8 C.F.R. § 295.5(b). However, that provision only
15 applies to removal proceedings, not to termination of asylum
16 interviews conducted by the USCIS. In removal proceedings, an
17 alien is entitled to a full evidentiary hearing in immigration
18 court, which includes "a reasonable opportunity to examine the
19 evidence against the alien, to present evidence on the alien's own
20 behalf, and to cross-examine witnesses presented by the Government
21 . . . ." 8 U.S.C. § 1229a(b)(4); 8 C.F.R. § 292.5(b). In a
22 termination interview, "the alien shall be provided the opportunity
23 to present evidence showing that he or she is still eligible for
24 asylum." 8 C.F.R. § 208.24. While an alien has an opportunity to
25 present evidence at a termination interview, the regulations do not
26 provide an alien with the right to present or cross-examine
27 witnesses at the interview. Therefore, the Court grants
28 Defendants' motion to dismiss to the extent that the complaint

11

asserts a violation of § 292.5(b).

## CONCLUSION

For the foregoing reasons, the Court grants in part Defendants' motion to dismiss. Because Plaintiffs cannot state a claim for a violation of § 292.5(b), the Court dismisses with prejudice that aspect of the first cause of action. Defendants must file an answer within twenty (20) days from the date of this order. The parties shall attempt to stipulate to a schedule for filing the administrative record and filing cross-motions for summary judgment. If they are unable to stipulate, they shall each submit a proposal within thirty days from the date of this order.

IT IS SO ORDERED.

Dated: 6/10/09

CLAUDIA WILKEN
United States District Judge